GARDNER GOVERNOR COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GARDNER-DENVER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 46549, 57652. Promulgated April 14, 1933.

*Robert Ash, Esq.,* for the petitioners.
*Allen Pierce, Esq.,* for the respondent.

OPINION.

VAN FOSSAN: The underlying question in the cases before us is whether or not the issuance of the common and preferred stock of petitioners was pursuant to a sale of stock to employees or was the payment of additional compensation. This question can be answered only by determining whether the stock subscription plan was essentially a contract of purchase and sale or a contract of employment. *Anthony Schneider*, 3 B. T. A. 920; *Albert Russell Erskine*, 26 B. T. A. 147. If the former, then the deductions are not allowable in any event. If the latter, then totally different considerations govern.

The offer made by the companies and the acceptances by the employees together constituted the contracts under which the stock subscriptions were made and stock later issued. On its face the contract contains all of the essentials of an agreement of purchase and sale. It speaks specifically in terms usually employed to connote a sale. There was an offer to sell and an agreement to subscribe and pay for. The price was definitely fixed, being approximately the then market price. Payments were to be made by deductions from wages. Cash dividends were to be credited to the subscriber's account conditionally, the employee losing his claim to such dividends if he failed to complete the purchase or if the subscription was canceled. Sales of the same stock were made to the officers of the company at the same price as employees, but there is no claim that such stock or the dividends thereon were additional compensation to such officers.

Though terminology is not conclusive of the intent of the parties (*Alger-Sullivan Lumber Co.* v. *Commissioner*, 57 Fed. (2d) 3), if supported by similar collateral evidences and circumstances it is a fact of weight. The collateral evidences all support the conclusion that the contract was one of purchase and sale. There is no evidence that in 1923 when the plan was started either the employees or the company considered the stock or its earnings as additional compensation. The face of the contract making a prima facie case of

purchase and sale, the burden was on the petitioners to show that the situation was otherwise. This they failed to do. For aught the record shows the employees were, previous to 1923, adequately paid and were happy in their employment. There is no evidence that the plan reduced petitioners' labor overturn. There was not a suggestion at the inception of the plan that it was a veiled policy of paying additional compensation.

Nor is the fundamental legal character of the plan to be controlled by the fact that certain benefits flowed to the employer under its operations. There were obvious mutual benefits to employer and employee alike.

On the corporate books the employee contracts were treated as assets and the interest paid thereon by the employee as income. Likewise, all credits of cash, dividends and interest were listed as liabilities. The common stock held to complete the subscription contracts was also classed as a liability, being placed in the same category as other stock of the corporations.

On the record before us we are of the opinion that the stock subscriptions, under the plans in question, constituted contracts of purchase and sale and not employment contracts.

The above conclusion disposes of the contention that petitioners should be permitted to deduct the difference between the contract price and the market price at the time issued. It likewise disposes of the contention as to dividends and the preferred stock issued on account thereof.

The interest amounting to $5,548.02, paid by the employees on account of the deferred payments on subscription contracts, was income to the petitioners and should be accounted for as such. The item of interest amounting to $2,560.84 credited by petitioner, the Gardner-Denver Company, on dividends credited but not paid was an accrual of interest due for money borrowed and was an allowable deduction. The company kept its accounts and made its return on the accrual basis.

Reviewed by the Board.

*Decision will be entered under Rule 50.*